## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JOHN LAMARTINA HOWELL**                                    **CIVIL ACTION**

**VERSUS**                                                          **No. 16-14141**

**DAVID V. ADLER ET AL.**                                        **SECTION I**

### ORDER AND REASONS

Before the Court are two motions[1] to dismiss.  After obtaining additional briefing from the parties to address an issue which was not raised in the original motions, the Court grants both motions and dismisses all claims.

### I.

The background of this litigation is somewhat confusing.  After reviewing the complaint, the briefs, and the records of prior court proceedings, however, the Court gleans the following facts.  The plaintiff is John LaMartina Howell ("Howell").  The saga began when Howell's mother, Elise LaMartina, repeatedly failed to pay condominium assessments and homeowners' association dues for a condo unit she owns in Mandeville, Louisiana.  As a result, one of the defendants, Lake Villas No. 2 Homeowners Association, Inc. ("Lake Villas"), obtained money judgments against Howell's mother in state court and then initiated proceedings to seize and sell the unit.

---

[1] R. Doc. Nos. 11, 16.

During that state court action, it became clear that the judicial mortgage belonging to Lake Villas was not the only mortgage burdening the condo.  In fact, Lake Villas learned that its judicial mortgage was likely outranked by a conventional mortgage on the property.  It is the dispute over the ownership of that conventional mortgage which gives rise to the controversy before the Court.

Without going into unnecessary detail, several conflicting narratives emerged during the state court litigation.  At various times it appeared the mortgage belonged to Jane LaMartina—Howell's grandmother, to Donald Grodsky—a friend of Howell's family, to Timothy Howell—Howell's father, to Casa Pita, LLC—a limited liability company of which Grodsky was the only member, and to Howell himself.  The state court ultimately decided that defendant Donald Grodsky was the owner of the conventional mortgage.  Because Grodsky had declared bankruptcy prior to the initiation of the state court action, defendant David Adler, the bankruptcy trustee, intervened in the proceedings on behalf of the bankruptcy estate.  Further, prior to the state court's decision regarding the ownership of the mortgage, Adler and Lake Villas reached an agreement whereby both would share in the proceeds of any judicial sale of the condo unit.  The agreement was approved by the bankruptcy court and affirmed by this Court on appeal.  *See In re: Donald H. Grodsky*, Civil Action No. 14-1341, at R. Doc. No. 19 (E.D. La. 2014) (Africk, J.).

Howell appealed the state court decision regarding ownership of the mortgage. The Louisiana First Circuit Court of Appeal dismissed the appeal, and the Louisiana Supreme Court denied his application for writs.  *See Lake Villas No. II Homeowners'*

*Ass'n, Inc. v. LaMartina*, 2015-0244 (La. App. 1 Cir. 12/23/15), writ denied, 2016-0149 (La. 3/14/16), 189 So. 3d 1070.  Howell then filed this lawsuit against Grodsky, Lake Villas, Adler, and the attorneys and law firms which represented them in the state court and bankruptcy proceedings.  Howell asserts a litany of state law claims such as civil conspiracy, abuse of process, defamation, and tortious interference with business relations.  The complaint states that this Court has jurisdiction pursuant to 28 U.S.C. § 1331, but the only federal claim identified in the complaint is Howell's allegation that the defendants "violated the federal RICO statute."  *See* R. Doc. No. 1, at 16.

## II.

A quick word on the applicability of the *Rooker-Feldman* doctrine is appropriate even though the parties do not raise it.  "[T]he *Rooker–Feldman* doctrine holds that inferior federal courts do not have the power to modify or reverse state court judgments except when authorized by Congress." *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382 (5th Cir. 2013) (internal quotation marks and citation omitted).  However, "the doctrine is a narrow one and 'is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).  Because the doctrine is jurisdictional, it must be addressed at the outset of the litigation.  *Id.*

Although the complaint is less than clear about the relief Howell is seeking, the *Rooker-Feldman* doctrine bars at least some of Howell's claims.  The complaint alleges, among other things, that "[a]fter denying <u>every</u> motion, exception, and objection raised during the January 8, 2013 proceeding, the trial court proceeded to erroneously, and against all law and evidence, conclude Grodsky was the owner of your Plaintiff's note."  R. Doc. No. 1, at 12 ¶ 39 (emphasis in original).  To the extent Howell asks this Court to overturn the state court judgment, *Rooker-Feldman* precludes the Court from doing so.  *See Truong*, 717 F.3d at 382; *Morris v. Am. Home Mortg. Servicing, Inc.*, 443 Fed. App'x. 22, 24 (5th Cir. 2011) (federal plaintiff's claim that a foreclosure judgment should be overturned as unlawful was barred "because he is complaining of injuries caused by the state court judgments").

However, the bulk of the complaint's allegations center not on the impropriety of the state court judgment itself, but rather on the alleged unlawful behavior of the parties and their attorneys in obtaining that judgment.  *See, e.g.*, R. Doc. No. 1, at 13 ¶ 43 ("When the opportunity presented itself, these Defendants entered into a scheme and engaged in a pattern of behavior and misconduct intended to defraud John and Jane of their property through threats, intimidation, bribery, and abuse of the legal system.").  Such claims do not fall within the scope of *Rooker-Feldman*.  The doctrine does not apply to claims that the plaintiff was damaged by way of illegal acts or omissions made by adverse parties during the state court proceedings.  *See Truong*, 717 F.3d at 382-84; *Ill. Cent. R.R. Co. v. Guy*, 682 F.3d 381, 391 (5th Cir. 2012) (*Rooker–Feldman* does not bar a claim that the state-court plaintiffs' lawyers

4

obtained a settlement judgment through fraudulent misrepresentations); *Drake v. St. Paul Travelers Ins. Co.*, 353 Fed. App'x. 901, 905 (5th Cir. 2009) (*Rooker–Feldman* does not bar state-court loser's claim for damages as to state-court winner's alleged fraudulent statements in state-court litigation).

Because Howell advances such claims here, *Rooker-Feldman* does not bar this Court from considering them.  But although *Rooker-Feldman* is not jurisdictionally fatal to all of the claims in the complaint, the Court finds that the remaining claims should nonetheless be dismissed.

## III.

The Court first considers the motion to dismiss filed by Adler (the bankruptcy trustee) and his attorneys in the bankruptcy proceedings (the law firm Gordon, Arata, McCollam, Duplantis & Eagan, LLC and attorneys David Messina and Fernand Laudumiey).  Adler and his attorneys argue that Howell's claims must be dismissed because Howell failed to obtain permission from the bankruptcy court before filing this lawsuit.

Pursuant to the U.S. Supreme Court's decision in *Barton v. Barbour*, 104 U.S. 126, 127 (1881), lawsuits against bankruptcy trustees for acts committed in their official capacities are not permitted without leave of the bankruptcy court.  *See Villegas v. Schmidt*, 788 F.3d 156, 158 (5th Cir. 2015).  Failure to obtain leave from the bankruptcy court deprives the non-appointing court of subject matter jurisdiction that it might otherwise have.  *See Randazzo v. Babin*, No. 15-4943, 2016 WL 4418969, at \*1 (E.D. La. Aug. 18, 2016).  The *Barton* doctrine, as it has been termed, also

protects the bankruptcy trustee's attorneys. *See McDaniel v. Blust*, 668 F.3d 153, 157 (4th Cir. 2012); *In re Lowenbraun*, 453 F.3d 314, 321 (6th Cir. 2006).

It is undisputed that Howell failed to obtain permission from the bankruptcy court prior to filing this lawsuit. Further, it is clear that all of the allegations against Adler and his attorneys relate to acts performed "within the context of [their] role of recovering assets for the estate." *See McDaniel*, 668 F.3d at 157. All of the allegations against Adler and his attorneys accordingly fall within the scope of the *Barton* doctrine, and this Court lacks jurisdiction to consider them. The claims against Adler, the law firm Gordon, Arata, McCollam, Duplantis & Eagan, LLC, and attorneys David Messina and Fernand Laudumiey must be dismissed.

## IV.

The Court next considers the motion filed by Lake Villas and its attorneys in the state court proceedings (the law firm Seale & Ross, PLC and attorneys Glen Galbraith and Leslie Bolner). These defendants seek dismissal on the ground that Howell has failed to state a federal claim. Although the motion was filed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court explained in a previous order that it is properly considered under Rule 12(b)(6). *See* R. Doc. No. 21. Having now received additional briefing from the parties under the appropriate standard, the Court considers whether the complaint states a RICO claim.

Rule 12(b)(6) permits a defendant to seek a dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss, the Court accepts as true the well-pled factual

allegations in the complaint, and construes them in the light most favorable to the plaintiff. *Hunter v. Berkshire Hathaway, Inc.*, No. 15-10854, 2016 WL 3710253, at *3 (5th Cir. July 11, 2016). For the complaint to survive a motion to dismiss, the facts taken as true must state a claim that is plausible on its face. *Brand Coupon Network, L.L.C. v. Catalina Marketing Corp.*, 748 F.3d 631, 637-38 (5th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Culbertson v. Lykos*, 790 F.3d 608, 616 (5th Cir. 2015). The Court cannot grant a motion to dismiss under Rule 12(b)(6) "unless the plaintiff would not be entitled to relief under any set of facts that [the plaintiff] could prove consistent with the complaint." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). Because Howell proceeds pro se, the Court liberally construes his complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

A plaintiff alleging a violation under the RICO statute, 18 U.S.C. § 1962, must show that the litigation involves: "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009). RICO defines an enterprise as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association-in-fact enterprise "(1) must

7

have an existence separate and apart from the pattern of racketeering, (2) must be an ongoing organization and (3) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure." *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015) (internal quotation marks and citation omitted).

### A.

Howell alleges that the RICO enterprise is an association-in-fact of the defendants. *See* R. Doc. No. 19, at 23. He claims the enterprise was formed to defraud himself and his grandmother of their ownership interest in the mortgage. The allegations in Howell's complaint are difficult to understand and often conclusory, but Howell appears to rely entirely on the alleged fraudulent actions taken by the defendants in the state court and bankruptcy litigation to prove that they were working together toward a common purpose. Because the Fifth Circuit holds that a "pattern of racketeering activity does not, by itself, necessarily show that an enterprise exists," *Plambeck*, 802 F.3d at 673, the Court is skeptical that Howell's allegations meet the standard for demonstrating an enterprise. Nevertheless, the Court will not dismiss Howell's RICO claim on that basis in light of the Supreme Court's instruction that evidence establishing the enterprise and evidence establishing the pattern of racketeering activity "may in particular cases coalesce." *See United States v. Turkette*, 452 U.S. 576, 583 (1981).

But an enterprise must also be "an ongoing organization." *Plambeck*, 802 F.3d at 673. Indeed, "[t]he linchpin of enterprise status is the continuity or ongoing nature

of the association." *Id.*  The complaint alleges a pattern of misconduct which began in February 2013 and concluded—at the latest—when the Louisiana Supreme Court denied Howell's application for writs in 2016.  All of the alleged misconduct occurred during the state court and bankruptcy court proceedings.  As the Fifth Circuit recognized in *In re Burzynski*, 989 F.2d 733, 743 (5th Cir. 1993), such allegations are insufficient to demonstrate continuity of an enterprise.

In *Burzynski*, the plaintiff doctor alleged that the defendant insurance company and related entities committed predicate acts for the purpose of avoiding paying plaintiff's just insurance claims and putting the plaintiff out of business.  989 F.2d 733.  The prior acts, which all occurred during a previous lawsuit between the parties, consisted of the defendants sending thirty-five letters to other insurance companies to dissuade them from paying plaintiff's claims during the prior litigation, filing fraudulent pleadings in the prior litigation, submitting false grant applications, providing false information about plaintiff to federal investigators, and denying coverage of plaintiff's claims for patients insured by defendants.  *Id.* at 738.

When considering whether the alleged scheme constituted an "enterprise" for RICO purposes, the Fifth Circuit emphasized that "two individuals who join together for the commission of one discrete criminal offense have not created an 'association-in-fact' enterprise, even if they commit two predicate acts during the commission of this offense, because their relationship to one another has no continuity." *Id.* at 743 (internal quotation marks and citation omitted).  Because the defendants committed "the alleged predicate acts during the course of that litigation, which began in August

9

1986 and ended in summary judgment for both sides on March 31, 1992," the Fifth Circuit held that the "association-in-fact" enterprise "lacks the needed continuity." *Id.* at 744.

The *Burzynski* case is analogous to the case before the Court.  As the defendants observe, lawsuits "are necessarily limited in time, coming to an end when final judgment is rendered."  *See* R. Doc. No. 27, at 4.  Accordingly, even if the allegations in Howell's complaint are accepted as true, the alleged enterprise ceased to exist once the litigation came to an end.  Further, although Howell may allege a number of predicate acts which occurred during the course of the litigation, those predicate acts do not establish a continuing enterprise where they relate to "the commission of one discrete criminal offense," *see Burzynski*, 989 F.2d at 743,—*i.e.*, the fraudulent obtainment of Howell's mortgage.  *See also Calcasieu Marine Nat. Bank v. Grant*, 943 F.2d 1453, 1462 (5th Cir. 1991) (holding that because the defendants' conspiracy to deprive the plaintiff of her interest in a valuable community property partnership "was only a single, short-term goal," the "ad hoc association would lack the continuity required to support a RICO claim"); *Manax v. McNamara*, 842 F.2d 808, 812 (5th Cir. 1988) ("The association alleged by Manax had as its purpose a single, relatively short-lived goal: accomplishing the destruction of Manax's medical practice.  The association was ad hoc; *i.e.*, it was formed for the immediate accomplishment of one specific end.  It therefore lacked the continuity required to bring it within RICO's ambit.").

Howell attempts to distinguish *Burzynski* and characterize the enterprise as ongoing in two ways.  First, Howell argues that he continues to be injured by the defendants' wrongful conduct which deprived him of his interest in the mortgage.  Second, Howell argues that the enterprise is continuing because the defendants are allegedly threatening to sue Grodsky if he changes his story and admits that the mortgage does not belong to him.  But neither of those allegations can satisfy the continuity requirement.  After all, if the fact that a plaintiff continues to suffer harm from an alleged conspiracy was sufficient to satisfy the continuity requirement, a plaintiff would always be able to allege a continuing enterprise.  Similarly, Howell's conclusory assertion that members of the RICO conspiracy keep their co-conspirator in line by threatening to sue him if he recants cannot be sufficient to show an ongoing enterprise.  Members of an alleged RICO conspiracy will always remain exposed to future harm if one of the conspirators chooses to reveal the conspiracy.

In short, as in *Burzynski*, "the alleged predicate acts took place as part of [earlier] litigation, which has ended."  989 F.2d at 743.  Further, the predicate acts related to "the commission of one discrete criminal offense." *See id*.  Accordingly, even accepting the complaint as true, the continuity element necessary to establish the existence of an enterprise is lacking.

### B.

Even if Howell has adequately alleged an enterprise, however, a RICO plaintiff must also allege facts which accepted as true demonstrate a "pattern of racketeering activity." *See Howard*, 556 F.3d at 263.  Section 1961(5) of the statute defines

"pattern of racketeering activity," and requires two or more predicate acts of "racketeering activity" before the activity can be considered a "pattern."  18 U.S.C. § 1961(5).

The complaint does not identify any predicate acts.  In his opposition to the motion, however, Howell requests leave to amend his complaint in order to plead predicate acts.  Although his brief is less than clear, Howell appears to identify bribery, extortion, mail fraud, and wire fraud as predicate acts which would support his claim. *See* 18 U.S.C. § 1961(1) (identifying the predicate acts which can constitute racketeering activity).  But even assuming that Howell can state a claim for bribery, extortion, mail fraud, and wire fraud, it would be pointless to allow Howell to amend his complaint in order to add those allegations.  Just as Howell must allege continuity with respect to the enterprise, he must also allege continuity with respect to the pattern of racketeering activity.  Because Howell cannot do so, his complaint as amended would nevertheless be subject to dismissal.  *See Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (internal quotation marks and citation omitted) (observing—in a RICO case, no less—that "a district court may refuse leave to amend if the filing of the amended complaint would be futile, *i.e.*, if the complaint as amended would be subject to dismissal").

The Fifth Circuit has also explained that the "pattern of racketeering activity" requirement is satisfied only by showing that the predicate acts are "related" to each other and that they have "continuity." *Burzynski*, 989 F.2d at 742.  Predicate acts are "related" if they "have the same or similar purposes, results, participants, victims,

or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* To satisfy the continuity requirement, a plaintiff "must be able to plead that the predicate acts amount to or threaten *continuing* racketeering activity." *Id.* (emphasis in original). Continuity "refers either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* (citation omitted). Courts have habitually held that continuity can be satisfied by alleging either a closed period of racketeering conduct or an open period of racketeering conduct.

A closed period of conduct may be demonstrated by proving a series of related predicates extending over a substantial period of time. *See Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996). An open period of conduct may be shown where there exists a "specific threat of repetition extending indefinitely into the future," or "where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business." *Id.* Notably, however, the Fifth Circuit recognizes that "[i]t is unnecessary to delve into the arcane concepts of a closed-end or open-ended continuity under RICO in cases where alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction, for in such cases, a pattern of racketeering activity has not been shown." *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (internal quotation marks and citation omitted). As the cases below illustrate, this is just such a situation.

In *Word of Faith*, television evangelist Robert Tilton and his church sued news anchor Diane Sawyer, ABC, and other persons and entities who worked to produce a

13

series of news broadcasts critical of the church's fundraising techniques. *Word of Faith*, 90 F.3d 118. After the shows aired, donations to the church dropped sharply and it was forced to shut down its television ministry. The church and Tilton alleged that ABC and the other defendants had engaged in a RICO conspiracy aimed at driving the church out of business. In considering the "continuity" of the defendants' conduct, the Fifth Circuit opined:

> In this case, the alleged predicate acts occurred during the production and airing of *PrimeTime* broadcasts concerning Tilton and his Church. The alleged acts were all part of a single, lawful endeavor—namely the production of television news reports concerning a particular subject. We agree with the district court that the Church has failed to plead a continuity of racketeering activity, or its threat.

*Id.* at 123 (internal quotation marks and citation omitted).

Similarly, in the *Burzynski* case discussed in the previous section, the Fifth Circuit held that the plaintiff had not adequately alleged a pattern of racketeering activity because he had failed to show continuity. 989 F.2d at 742-43. Relying on a previous case in which it "affirmed the dismissal of a RICO claim where the plaintiff alleged multiple acts of fraud that were part and parcel of a single, discrete and otherwise lawful commercial transaction," the court held that because all of the alleged misconduct took place during "the defense of a lawsuit—which is now over," the conduct "did not constitute or threaten long-term criminal activity." *Id.* at 743 (citing *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 244 (5th Cir. 1988)); *see also Castrillo v. Am. Home Mortg. Servicing, Inc.*, 670 F. Supp. 2d 516, 531 (E.D.

La. 2009) (Vance, J.) (finding that alleged multiple acts related to the refinancing and attempted foreclosure of plaintiff's home were a single, discrete transaction).[2]

Simply put, there can be no pattern of racketeering activity where the plaintiff alleges "conduct that had an inherent and definite termination point and did not present a future threat of repetition." *Larco Towing, Inc. v. Newpark Drilling Fluids, LLC*, No. 09-2928, 2010 WL 1416550, at *2 (E.D. La. Mar. 31, 2010) (Engelhardt, J.) (citations omitted). Howell alleges a pattern of misconduct which began in February 2013 and concluded in 2016 when his application for writs to the Louisiana Supreme Court was denied. The alleged scheme is now over, as defendants have purportedly succeeded in their goal of defrauding plaintiff of the mortgage by obtaining a favorable ruling in state court. Further, all of the alleged predicate acts occurred during the course of a single, otherwise lawful endeavor—a lawsuit aimed at seizing and selling Howell's mother's condo unit. *See Singh*, 480 F.3d at 355. Accordingly, even accepting the complaint, deficient as it is, and the allegations in Howell's opposition brief as true, the continuity element necessary to establish a "pattern" of racketeering activity is absent.

Although courts are generally willing to construe pro se filings liberally, "we still require pro se parties to fundamentally abide by the rules that govern the federal courts." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014). "Pro se litigants

---

[2] This case is not like *Abraham v. Singh*, 480 F.3d at 356 (overturning this Court's decision that the complaint failed to plead continuity where there were multiple victims of the alleged human trafficking scheme and where there was no reason to believe that the "systematic victimization" of up to 200 or more Indian citizens would not have continued indefinitely but for the lawsuit).

must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief." *Id.* While the Court could exercise supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367(a), the Court will decline to do so in light of its dismissal of all claims over which the Court has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3).

## V.

For the foregoing reasons,

**IT IS ORDERED** that the motions to dismiss are **GRANTED**. Howell's claims against David Adler, the law firm Gordon, Arata, McCollam, Duplantis & Eagan, LLC, and attorneys David Messina, and Fernand Laudumiey are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction. Howell's RICO claim against the remaining defendants is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Howell's remaining state law claims are **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana, March 21, 2017.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

16